**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| FIBRIA CELULOSE USA INC.; SUZANO PULP AND PAPER AMERICA INC.; and SUZANO S.A.<br><br>Plaintiffs,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA<br><br>Defendants. | Court No. 26-01269 |

**COMPLAINT**

1. Fibria Celulose USA Inc.; Suzano Pulp and Paper America Inc.; and Suzano S.A. (collectively the "Plaintiffs") are U.S.-based (with the exception of Suzano S.A. which is based in Brazil) importers of merchandise on which they have paid tariffs that were rendered unlawful and void by the Supreme Court of the United States ("Supreme Court").

2. Beginning in February 2025, through a series of executive orders ("EOs"), the President invoked the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq*. to impose (and subsequently to increase and modify) new and extensive tariffs on nearly all foreign origin imported goods. This Complaint henceforth refers to all of the tariffs imposed since February 2025 pursuant to EOs that invoke IEEPA as their substantive legal basis as the "IEEPA Tariffs." Plaintiffs have sourced, and continue to source, their imports from countries that were subject to IEEPA Tariffs, and as importers of record, Plaintiffs have paid IEEPA Tariffs on their imported goods.

3. On February 20, 2026, the Supreme Court held that "IEEPA does not

1

authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).  As a result, <u>all</u> of the IEEPA Tariffs—as well as their underlying EOs and amendments to such EOs (collectively, the "IEEPA EOs")[1]—were

---

[1] The unlawful IEEPA EOs principally include the following:

**China**: Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025); Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,277 (Feb. 11, 2025); Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025); Exec. Order No. 14259*, Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China,* 90 Fed. Reg. 15,509 (Apr. 14, 2025); Exec. Order No. 14334, *Further Modifying Reciprocal Tariff Rates To Reflect Ongoing Discussions With the People's Republic of China*, 90 Fed. Reg. 39,305 (Aug. 14, 2025); Exec Order No. 14357, *Modifying Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 50,725 (Nov. 7, 2025); Exec. Order No. 14358, *Modifying Reciprocal Tariff Rates Consistent With the Economic and Trade Arrangement Between the United States and the People's Republic of China*, 90 Fed. Reg. 50,729 (Nov. 7, 2025).

**Mexico**: Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14198, *Progress on the Situation at Our Southern Border*, 90 Fed. Reg. 9,185 (Feb. 10, 2025); Exec. Order No. 14227, *Amendment to Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 11,371 (March 6, 2025); Exec. Order No. 14232, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Southern Border*, 90 Fed. Reg. 11,787 (March 11, 2025).

**Canada**: Exec. Order No. 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14197, *Progress on the Situation at Our Northern Border*, 90 Fed. Reg. 9,183 (Feb. 10, 2025); Exec. Order 14226, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 11,369 (March 6, 2025); Exec. Order No. 14231, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 11,785 (Mar. 11, 2025); Exec. Order No. 14325, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 37,957 (Aug. 6, 2025).

**Brazil**: Exec. Order No. 14323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37,739 (Aug. 5, 2025); Exec. Order No. 14361, *Modifying the Scope of Tariffs on the Government of Brazil*, 90 Fed. Reg. 54,467 (Nov. 26, 2025).

**India**: Exec. Order No. 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38,701 (Aug. 11, 2025); Exec. Order No. 14384, *Modifying Duties To Address Threats to the United States by the Government of the Russian Federation*, 91 Fed. Reg. 6501 (Feb. 11, 2026).

**Global**: Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025); Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment,* 90 Fed. Reg. 15,625 (Apr. 15, 2025); Exec. Order No. 14289, *Addressing Certain Tariffs on Imported Articles*, 90 Fed. Reg. 18,907 (May 2, 2025); Exec. Order No. 14316, *Extending the Modification of the Reciprocal Tariff Rates*, 90 Fed. Reg. 30,823 (July 10, 2025); Exec. Order No. 14326, *Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37,963 (Aug. 6, 2025); Exec. Order No. 14346, *Modifying the Scope of Reciprocal Tariffs and Establishing Procedures for Implementing Trade and Security*

rendered *ultra vires* and void *ab initio*.

4. The legality of the IEEPA Tariffs is no longer in dispute. The Supreme Court's holding in *Learning Resources* rendered all tariffs imposed to date under IEEPA unlawful and foreclosed the President's ability to impose tariffs using IEEPA in the future. This complaint now seeks to secure relief for importers that have paid, or will pay, IEEPA Tariffs and are entitled to relief from such unlawful tariffs, in the form of refunds.

5. Plaintiffs have paid IEEPA Tariffs on entries that will liquidate imminently. Through this action, Plaintiffs seek an order from this Court mandating that CBP: (1) reliquidate, without IEEPA Tariffs, all entries imported by Plaintiffs that were subject to IEEPA Tariffs that will liquidate on or before the date on which this Court issues a final decision on the merits for this Complaint; and (2) issue prompt and complete refunds, with interest, of all IEEPA Tariffs that were paid or will in the future be paid by Plaintiffs.

**PARTIES**

6. Plaintiff, Fibria Celulose USA Inc., is a U.S. Company, incorporated in Delaware and located at 6451 N Federal Highway, Ste 302, Fort Lauderdale, FL, 33308.

7. Plaintiff, Suzano Pulp and Paper America Inc., is a U.S. Company, incorporated in Delaware and located at 6451 N Federal Highway, Ste 302, Fort Lauderdale, FL, 33308.

8. Plaintiff, Suzano S.A., is a Brazilian Company, incorporated in Brazil and located at Avenida Professor Magalhães Neto, nº 1.752, 10º andar, Salas 1009, 1010 e 1011, bairro Pituba, Zip Code 41810-012, City of Salvador, State of Bahia, Brazil.

---

*Agreements*, 90 Fed. Reg. 43,737 (Sept. 10, 2025); Exec. Order No. 14360, *Modifying the Scope of the Reciprocal Tariffs With Respect to Certain Agricultural Products*, 90 Fed. Reg. 54,091 (Nov. 25, 2025).

9. Defendant CBP is an agency within the U.S. Department of Homeland Security headquartered in Washington, D.C. that enforces federal customs laws. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

10. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

11. Defendant United States of America is the recipient of the unlawfully collected IEEPA Tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

12. Defendants are referred to collectively in this complaint as "CBP".

## JURISDICTION

13. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See Learning Resources*, No. 24-1287, slip op. at 5 n. 1.

14. This Court has the same powers in law and equity of, or as conferred by statute upon, a United States District Court. 28 U.S.C. § 1585. The Court can enter a money judgment against the United States in a civil action commenced under 28 U.S.C. §1581 and order any other appropriate form of civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus and prohibition. 28 U.S.C. §§2643(a)(1), (c)(1).

15. Plaintiffs have standing to bring this lawsuit because they are the importers of record for goods imported into the United States that were subject to the IEEPA Tariffs, as implemented and collected by CBP, that have been held unlawful by the Supreme Court. As a result of the IEEPA EOs that were held unlawful by the Supreme Court, Plaintiffs

have paid IEEPA Tariffs to the United States and have accordingly suffered injuries caused by the IEEPA EOs. The relief Plaintiffs seek from this Court would redress those injuries.

## GENERAL PLEADINGS

**I.    The Supreme Court held unlawful the EOs that invoke IEEPA to impose tariffs.**

### A.    The IEEPA Tariffs

16.    The IEEPA Tariffs were imposed—and subsequently increased and modified—through the IEEPA EOs, which invoked IEEPA as the substantive legal basis for such tariffs. The principal IEEPA EOs included the following:

a. EO 14194 of February 1, 2025, which announced an additional 25% tariff, effective February 4, 2025, on the importation of all Mexican origin goods, with certain statutory exceptions based on IEEPA. *See* Exec. Order No. 14194, *Imposing Duties to Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025);

b. EO 14193 of February 1, 2025, which announced an additional 25% tariff, effective February 4, 2025, on the importation of all Canadian origin goods, with certain statutory exceptions based on IEEPA and a lower 10% rate for Canadian energy and energy resources. *See* Exec. Order No. 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025);[2]

---

[2]    The effective date of the tariffs announced in EOs 14193 and 14194 was subsequently delayed to March 4, 2025. *See* Exec. Order No. 14198, *Progress on the Situation at Our Southern Border*, 90 Fed. Reg. 9,185 (Feb. 10, 2025); *see also* Exec. Order No. 14197, *Progress on the Situation at Our Northern Border*, 90 Fed. Reg. 9,183 (Feb. 10, 2025). Further, the President issued additional EOs on March 6, 2025, establishing exclusions from the tariffs imposed pursuant to EOs 14193 and 14194, as amended, for goods that qualified for preferential treatment under the U.S.-Canada-Mexico Agreement ("USMCA"). *See* Exec. Order No. 14232, *Amendment to Duties To*

c. EO 14325 of July 31, 2025, which raised the tariff imposed on imports from Canada pursuant to EO 14193, as amended, to 35%, effective August 1, 2025. *See* Exec. Order 14325, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 37,957 (August 6, 2025). This EO also established that any imported goods that did not qualify for preferential treatment under the USMCA and that CBP deemed were "transshipped" to avoid these tariffs would instead be subject to a higher, 40% tariff rate. *See id.*;

d. EO 14195 of February 1, 2025, which imposed an additional 10% tariff on Chinese origin products imported into the United States, effective February 4, 2025, with certain statutory exceptions based on IEEPA. *See* Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9,121 (Feb. 7, 2025);

e. EO 14228 of March 3, 2025, which raised the tariff rate on Chinese origin imports imposed pursuant to EO 14195 to 20%. *See* Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025);

f. EO 14257 of April 2, 2025, which imposed a 10% baseline tariff on most

---

*Address the Flow of Illicit Drugs Across Our Southern Border*, 90 Fed. Reg. 11,787 (March 11, 2025); *see also* Exec. Order No. 14231, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 11,785 (Mar. 11, 2025). These EOs also established a lower 10% tariff rate for Mexican and Canadian origin potash that did not qualify for preferential treatment under the USMCA. *See id*.

6

imports into the United States from nearly all countries, effective April 5, 2025. *See* Exec. Order No. 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025). EO 14257 also announced higher, "reciprocal" tariffs on countries listed in Annex I to the EO, which would take effect on April 9, 2025. *See id.*;

g. EO 14259 of April 8, 2025, which raised the "reciprocal" tariff on products of China announced in EO 14257 from 34% to 84%. *See* Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025);

h. EO 14266 of April 9, 2025, which suspended the higher "reciprocal" tariffs on imports from specified countries announced in EO 14257 for 90 days, effective April 10, 2025. *See* Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 15, 2025). However, EO 14266 did not suspend the higher "reciprocal" tariff for imports from China; rather, this EO raised the "reciprocal" tariff for imports from China from 84% to 125%. *See id*. Meanwhile, the 20% tariff on imports of Chinese origin that had been imposed pursuant to EOs 14195 and 14228 remained in place, such that most imports from China would face a minimum combined IEEPA tariff rate of 145%;

7

    i.    EO 14298 of May 12, 2025, which reduced and suspended the "reciprocal" tariffs on imports from China for 90 days and maintained the same 10% baseline tariff on imports from China that applied to imports from most other countries. *See* Exec. Order. 14298, *Modifying Reciprocal Tariff Rates To Reflect Discussions With the People's Republic of China*, 90 Fed. Reg. 21,831 (May 21, 2025). At this time, the 20% tariff on imports from China that had been imposed pursuant to EOs 14195 and 14228 remained in place, such that most imports from China faced a combined IEEPA tariff rate of 30%;

    j.    EO 14326 of July 31, 2025, which imposed "reciprocal" tariff rates between 10% and 41% on specified countries, effective August 7, 2025. *See* Exec. Order No. 14326, *Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37,963 (Aug. 6, 2025). The baseline 10% tariffs imposed on most imports from nearly all other countries pursuant to EO 14257 remained in effect. *See id.*;

    k.    EO 14334 of August 11, 2025, which continued the suspension of a higher "reciprocal" tariff rate on imports from China until November 10, 2025, *see* Exec. Order. 14334, *Further Modifying Reciprocal Tariff Rates To Reflect Ongoing Discussions With the People's Republic of China*, 90 Fed. Reg. 39,305 (August 14, 2025), and EO 14358 of November 4, 2025, which further suspended these tariffs until November 10, 2026. *See* Exec. Order No. 14358, *Modifying Reciprocal Tariff Rates Consistent with the Economic and Trade Arrangement Between the United States and the*

8

*People's Republic of China*, 90 Fed. Reg. 50,729 (Nov. 7, 2025);

l. EO 14357 of November 4, 2025, which reduced the tariff on Chinese imports imposed pursuant to EOs 14195 and 14228 to 10%, effective November 10, 2025. *See* Exec. Order. 14357, *Modifying Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 50,725 (November 7, 2025);

m. EO 14323 of July 30, 2025, which imposed an additional 40% tariff on most imports from Brazil, effective August 6, 2025. *See* Exec. Order No. 14323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37,739 (Aug. 5, 2025);

n. EO 14329 of August 6, 2025, which imposed an additional 25% tariff on most imports from India, effective August 27, 2025. *See* Exec. Order No. 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38,701 (Aug. 11, 2025). These additional 25% tariffs were terminated as of February 7, 2026. *See* Exec. Order No. 14384, *Modifying Duties To Address Threats to the United States by the Government of the Russian Federation*, 91 Fed. Reg. 6501 (Feb. 11, 2026).

17. In implementing each of the IEEPA EOs, changes were made to the Harmonized Tariff Schedule of the United States ("HTSUS"), requiring that goods subject to the tariffs imposed or modified pursuant to such EOs be entered under new HTSUS codes.

### B. CBP implemented the unlawful tariffs

18. CBP is charged with the assessment and collection of duties, including the IEEPA Tariffs. *See* 19 U.S.C. §§ 1500, 1502.

19. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the new tariff nomenclature: the HTSUS. Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings within each chapter of the HTSUS describe broad categories of merchandise, while its subheadings provide a stipulated division of the goods within each heading. *See id.*

20. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. *See* 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

21. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (Ct. Int'l Trade 2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

22. When goods are imported into the United States, CBP is responsible for assessing and collecting all applicable duties on those goods, after confirming the HTSUS classification and the applicable rates of the goods, as established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

23. CBP collected IEEPA Tariffs, as directed by and pursuant to the IEEPA

EOs, between February 4, 2025, and February 24, 2026. *See* Cargo Systems Messaging Service Message # 67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb 22, 2026) (announcing that IEEPA Tariffs would "no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026.").[3]

### C.   Liquidation

24.   Liquidation "means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

25.   Typically, when goods are imported (or entered) into the United States, the importer of record pays an estimated duty on the entry based on its customs entry summary declaration, which asserts an entered value, country of origin, and HTSUS classification for the imported goods. *See* 9 U.S.C. § 1484. CBP then reviews the entry summary declaration and may inspect the goods to confirm the information declared by the importer of record.

26.   CBP fixes the final appraisement of the entered merchandise by confirming the entered value pursuant to 19 U.S.C. § 1401a, the appropriate HTSUS classification, the Most Favored Nation ("MFN") duty rate applicable to the HTSUS classification of the good, and the tariff rate[s], if any, for the imported goods. *See* 19 U.S.C. § 1500.

27.   Once the final amount of duty owed is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(a); 19 C.F.R. § 159.9.

---

[3] Available at: https://content.govdelivery.com/bulletins/gd/USDHSCBP-40b11c9?wgt_ref=USDHSCBP_WIDGET_2.

28. Liquidation, unless extended, must occur within one year from the date of entry, among other possible dates depending on the circumstances. *See* 19 U.S.C. § 1504(a). Typically, by operation of law, liquidation is done automatically at the rate of duty, value, quantity, and amount of duties asserted by the importer of record at the date of entry of the merchandise, if not liquidated within one year. *See* 19 U.S.C. § 1504(a); 19 C.F.R. § 159.11. CBP, however, tries to liquidate entries 314 days after the date of entry of the goods and will provide notice of liquidation on CBP's public website. *See* 19 C.F.R. § 159.9.

29. CBP has discretion to extend the deadline for liquidation for up to one additional year, after the 1-year statutory period for liquidation, in response to: (1) a determination by CBP that it needs more information to properly appraise or classify the merchandise; or (2) the importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii). Up to three one-year extensions may be granted, for a possible total period of time before liquidation not to exceed four years. *See* 19 C.F.R. § 159.12(e).

30. Once liquidation has occurred, and *if* the action is protestable under 19 U.S.C. § 1514, an importer of record has 180 days from the date of liquidation to protest the administrative decision, asking CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514; 19 C.F.R. § 174.11.[4] Not all administrative actions or liquidations, however, are protestable; where CBP acts in a ministerial capacity (*i.e.*, without making a decision itself under 19 U.S.C. § 1514(a)) in imposing a duty, the entry's liquidation cannot be protested. *See id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

---

[4] CBP can also voluntarily reliquidate within 90 days of the liquidation. *See* 19 U.S.C. § 1501.

31. This Court recently confirmed its power to order the reliquidation of entries, stating that "the panel in *In re Section 301 Cases* unanimously agreed—as we do now—that the USCIT has 'the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties.'" *See AGS Company Automotive Solutions et. al v. U.S. Customs and Border Protection, et al.*, Consol. Court No. 25-00255 (Slip Op. 25-154), at 6 (citing to *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1363 (Ct. Int'l Trade 2021)).

II. **The Supreme Court held that IEEPA does not authorize tariffs, and therefore, the IEEPA Tariffs were all *ultra vires* and void *ab initio***

32. In 2025, various companies and state governments filed suit in U.S. federal courts challenging the IEEPA Tariffs. *See V.O.S. Selections, et al. v. Donald J. Trump, et al.*, No. 25-cv-00066 (Dkt. 2); *see also The State of Oregon et al. v. United States Department of Homeland Security et al.*, No. 25-cv-00077 (Dkt. 2); *Learning Resources, Inc. et al. v. Trump et al.*, No. 25-cv-1248 (Dkt. 1).

33. On May 28, 2025, this Court issued a joint opinion for the *V.O.S. Selections* and *Oregon* proceedings in which it held that IEEPA did not authorize the tariffs imposed pursuant to EOs 14193, 14194, 14195, and 14257, as amended. *See V.O.S. Selections*, No. 25-cv- 00066, Slip Op. 25-66 (Dkt. 55); *see also Oregon*, No. 25-cv-00077, Slip Op. 25-66 (Dkt. 65). Defendants appealed this Court's decision to the U.S. Court of Appeals for the Federal Circuit ("CAFC"), which affirmed this Court's decision on August 29, 2025. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025). Defendants then filed a petition for certiorari with the Supreme Court. *See Donald J. Trump, President of the United States, et al., Petitioners, v. V.O.S. Selections, Inc. et al., Petition for a Writ of Certiorari*, No. 25-250 (U.S. September 3, 2025).

34. Separately, the D.C. District Court issued an opinion in the *Learning Resources* proceedings on May 29, 2025, holding that IEEPA did not authorize the President to impose tariffs of any kind. *See Learning Resources, Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025). Defendants appealed this decision to the U.S. Court of Appeals for the D.C. Circuit, while the *Learning Resources* plaintiffs also filed a petition for certiorari before judgment with the Supreme Court. *See Learning Resources, Inc. et al., Petitioners v. Donald J. Trump, President of the United States, In His Official Capacity, et al., Petition for a Writ of Certiorari Before Judgment*, No. 24-1287 (U.S. June 17, 2025).

35. On September 9, 2025, the Supreme Court granted the *Learning Resources* plaintiffs' petition for certiorari before judgment, granted the Defendants' petition for certiorari in *V.O.S. Selections*, and consolidated these cases. *See* No. 25-250, 2025 WL 2601020 (U.S. September 9, 2025). The Supreme Court then received briefing in these consolidated cases and heard oral argument on November 5, 2025.

36. On February 20, 2026, the Supreme Court held that IEEPA does not authorize the President to impose tariffs. *See Learning Resources*, No. 24-1287. As a result of the Supreme Court's holding, all of the IEEPA Tariffs—and all of the IEEPA EOs—were rendered unlawful and void *ab initio*.

### III. Plaintiffs paid IEEPA Tariffs

37. As of the date of this Complaint, Plaintiffs have paid IEEPA Tariffs that were rendered unlawful and void *ab initio* by the Supreme Court's decision in *Learning Resources*.

38. Plaintiffs' imports subject to the IEEPA Tariffs entered the United States under new HTSUS codes from foreign countries.

39. Plaintiffs have paid IEEPA Tariffs on numerous entries and on a continuous

basis.

40. The entries for which Plaintiffs have paid unlawful IEEPA Tariffs will liquidate imminently.

## STATEMENT OF CLAIMS

### COUNT I
### THE IEEPA TARIFFS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN *LEARNING RESOURCES*

41. Plaintiffs incorporate paragraphs 1-40 above by reference.

42. In *Learning Resources*, the Supreme Court held that IEEPA does not authorize the President to impose tariffs. *See Learning Resources*, No. 24-1287. This decision by the Supreme Court rendered all of the IEEPA Tariffs—and all of the IEEPA EOs—*ultra vires* and void *ab initio*.

43. For the reasons articulated in *Learning Resources*, CBP likewise lacked the authority to collect the IEEPA Tariffs paid by Plaintiffs on their imports into the United States. Moreover, CBP lacks the authority to collect any IEEPA Tariffs on Plaintiffs' imports in the future. In its motion to the Federal Circuit in *V.O.S. Selections* to stay the CIT's judgment, CBP confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any postjudgment interest that accrues." Gov't. Mot. Stay Pending Appeal, at 25, *V.O.S. Selections, Inc. v. Trump*, No. 25-1812 (Dkt. 6).

44. This Court is bound by the Supreme Court's decision in *Learning Resources*. As such, Plaintiffs respectfully request that this Court: (1) order the reliquidation, without IEEPA Tariffs, of Plaintiffs' entries that will liquidate on or before

the date that this Court issues a final decision on the merits for this Complaint; and (2) order that CBP issue prompt and complete refunds of all IEEPA Tariffs that have been paid or will be paid by Plaintiffs.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court:

a) order CBP to reliquidate, without IEEPA Tariffs, all of Plaintiffs' entries on which they paid IEEPA Tariffs and that liquidated on or before the date that this Court issues a final decision on the merits for this Complaint;

b) order the United States and CBP to promptly and completely refund all IEEPA Tariffs collected on Plaintiffs' entries (including liquidated entries), with interest as provided by law, to Plaintiffs;

c) award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action; and

d) grant such further relief as this Court deems proper.

Dated: February 27, 2026

Respectfully submitted,

/s/ [signature]
Christine Streatfeild
Lauren Shapiro
Jasmine Elmasry

Baker & McKenzie LLP
815 Connecticut Avenue NW
Washington, DC 20006
Tel: (202) 835 6111
Email: christine.streatfeild@bakermckenzie.com

*Counsel for Plaintiffs*